IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATALIE HAYES, et al.          :

                               :

    v.                        :    Civil Action No. DKC 08-2548

                               :

CITY OF SEAT PLEASANT,
MARYLAND, et al.               :

**MEMORANDUM OPINION**

Plaintiffs Ricardo Dixon and Natalie Hayes filed this action asserting several civil rights and state law claims against Defendants City of Seat Pleasant, Maryland ("the City") and Officer Tracey Burnett.  Presently pending and ready for resolution is a motion for summary judgment filed by Defendants. (Paper 21).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will grant Defendants' motion for summary judgment.

**I.   Background**

    **A.   Factual Background**

Ricardo Dixon and Natalie Hayes are husband and wife.  On September 27, 2006, Dixon was preparing to back out of Hayes' driveway when he noticed a marked police cruiser sitting directly opposite the driveway.  (Paper 29-1, Ex. 1, at 21-22, Paper 29-3, Ex. 3, at 2; Paper 21-5, Ex. B, at 4).  Inside the

car was Officer Tracey Burnett of the City of Seat Pleasant Police Department. (Paper 21-5, Ex. B, at 4). Dixon approached Officer Burnett's vehicle and asked if he would move his car to allow Dixon to exit the driveway (*id.* at 5; Paper 29-3, Ex. 3, at 2), but Officer Burnett responded that Dixon already had enough room to exit[1] (Paper 21-5, Ex. B, at 5; Paper 29-3, Ex. 3, at 2). Dixon then returned to his driveway, got in his car, and began to back out. (Paper 29-1, Ex. 1, at 6; Paper 21-5, Ex. B, at 5-6). Antonio Sallis and a child were also passengers in the vehicle.

While Dixon backed out, Officer Burnett pulled his car further down the street. (Paper 21-5, Ex. B, at 6; Paper 29-1, Ex. 1, at 6). Officer Burnett then made a three-point turn (Paper 21-5, Ex. B, at 6), activated his lights, and stopped Dixon (*id.* at 11, 25-26). Officer Burnett explained in his deposition testimony that he stopped the vehicle because it had a District of Columbia license plate, but he did not see the required registration sticker affixed to the front window. (*Id.* at 6). When he radioed communications with the vehicle's tag number, communications informed him that the tag belonged to a

---

[1] Plaintiffs aver that Officer Burnett responded, "What, you don't have enough room?" (Paper 29-3, Ex. 3, at 2; Paper 29-1, Ex. 1, at 6).

different make of vehicle. (*Id.* at 10). Thus, Officer Burnett felt a "normal traffic stop" was necessary to confirm whether the car was in fact registered. (*Id.* at 11).[2]

After the stop, Hayes approached Officer Burnett's police cruiser on foot and began asking him questions through the passenger-side window. (Paper 29-1, Ex. 1, at 7; Paper 21-5, Ex. B., at 13). The parties dispute many of the details of the conversation between Hayes and Officer Burnett. Officer Burnett contends Hayes was "yelling" at him (Paper 21-5, Ex. B., at 13) and Dixon agrees that Hayes was talking in a louder than conversational tone (Paper 21-6, Ex. C, at 2). In a tape of Officer Burnett's radio communications, a loud female voice can also be heard in the background. (Paper 30, Ex. D). Officer Burnett responded by telling Hayes to step back in some form. (Paper 21-5, Ex. B, at 13; Paper 29-1, Ex. 1, at 7; Paper 21-8, Ex. E, at 2). Officer Burnett maintains that he only told Hayes, "Ma'am, please step back, I'm trying to conduct a traffic stop here." (Paper 21-5, Ex. B, at 13). Hayes, on the other

---

[2] Officer Burnett testified in Plaintiffs' criminal trial that the sticker was on the dashboard and not affixed to the window. (Paper 29-2, Ex. 2, at 16). After the incident, he also learned that communications had made a mistake and that the tags did belong to Plaintiffs' vehicle. (Paper 29-1, Ex. 1, at 7; Paper 21-5, Ex. B., at 10).

hand, remembers "clearly" that Officer Burnett told her to "get the hell out of his face." (Paper 29-1, Ex. 1, at 7). Both parties agree that Hayes nevertheless continued making statements directed at Officer Burnett, including questioning Officer Burnett about why he was "harassing" her family. (Paper 29-1, Ex. 1, 8-9). Officer Burnett then got out of his car. (Paper 21-5, Ex. B, at 13; Paper 29-1, Ex. 1, at 9).

When Officer Burnett got out of his car, he and Hayes encountered each other once again – this time outside the car. Officer Burnett alleges that he attempted to approach the driver's side window of Dixon's car, but was "intercepted" by Hayes and "obstruct[ed]" from reaching Dixon's car. (Paper 21-5, Ex. B, at 14-15). He also asserts that he told Hayes that she was again interfering with his traffic stop and instructed her to return to the sidewalk. (*Id.* at 16). Hayes counters that Officer Burnett "jumped out of his vehicle [and] came around the front of his vehicle . . . to the sidewalk where [she] and [her] daughter [were] standing." (Paper 29-1, Ex. 1, at 10). Two other witnesses also indicated that Hayes did not leave the sidewalk. (Paper 29-2, Ex. 2, at 3; Paper 29-4, Ex. 4, at 7). According to Hayes, Officer Burnett then began "pointing and shouting" in her face, telling her to "shut the hell up." (*Id.* at 10-11).

At this point, Officer Burnett attempted to place Hayes under arrest. (Paper 21-5, Ex. B, at 18). While all parties agree that Officer Burnett grabbed Hayes' arm (*id.*; Paper 29-1, Ex. 1, at 12), Officer Burnett states that he only did so after Hayes refused to place her arms behind her back and physically resisted the arrest (Paper 21-5, Ex. B, at 18). The parties disagree over whether Officer Burnett warned Hayes that he was going to arrest her or that he was actually placing her under arrest. (*Id.* at 18; Paper 29-4, Ex. 4, at 3-4).

Back in his car, Dixon observed what was happening and responded by getting out of his car and approaching the officer and his wife. (Paper 29-1, Ex. 1, at 12; Paper 21-5, Ex. B, at 18-19; Paper 29-3, Ex. 3, at 3). There is a dispute over whether Dixon told Officer Burnett to take his hands off his wife and call a female officer (Paper 29-3, Ex. 3, at 3; Paper 29-1, Ex. 1, at 12) or whether Dixon said, "Don't put your mother fucking hands on my wife like that." (Paper 21-5, Ex. B, at 19). Plaintiffs maintain that Dixon complied with instructions from Officer Burnett to stay back, except for one step that he took away from the car (Paper 29-1, Ex. 1, at 14; Paper 29-3, Ex. 3, at 3); in contrast, Officer Burnett alleges that Dixon came close to him and touched his left shoulder, forcing Officer Burnett to push him away and instruct him to

stay back. (Paper 21-5, Ex. B, at 19, 21). According to Officer Burnett, Dixon then came at him again. (*Id.* at 19).

There is absolutely no dispute about what happened next: Officer Burnett retrieved his canister of Oleoresin Capsicum ("OC") spray[3] and sprayed one blast in each of Plaintiffs' faces. (Paper 29-1, Ex. 1, at 15; Paper 21-5, Ex. B, at 20; Paper 29-3, Ex. 3). The officer felt he was justified in using the spray on Hayes "[b]ecause she was resisting arrest, and I'm well within my rights to do whatever is necessary to execute the arrest . . . [and] [s]he had already demonstrated . . . that she was not going to go peacefully." (Paper 21-5, Ex. B, at 20). As for Dixon, Officer Burnett explained that he sprayed him "[b]ecause there was a potential that he would assault me, which he had already assaulted me by touching me." (*Id.*) After Officer Burnett sprayed Plaintiffs, additional officers arrived at the scene and Plaintiffs were taken into custody. (Paper 21-5, Ex. B, at 22-23).

Hayes was charged with obstructing and hindering, resisting arrest, and disorderly conduct. Dixon was charged with second-degree assault, obstructing and hindering, interfering with an arrest, and disorderly conduct. On June 25, 2007, Plaintiffs

---

[3] OC spray is commonly known as pepper spray.

were tried together before a jury in the Circuit Court for Prince George's County. The jury found Plaintiffs not guilty of all charges.

**B. Procedural Background**

Plaintiffs filed their complaint against Defendants in this court on September 29, 2008. (Paper 1). The complaint contains eight counts, including claims of (1) excessive force and police brutality, (2) battery, (3) negligent training and supervision (asserted against only the City), (4) intentional infliction of emotional distress (asserted against only Officer Burnett), (5) false arrest and imprisonment, (6) malicious prosecution, (7) deprivation of civil rights (asserted against only Officer Burnett), and (8) violation of Plaintiffs' rights under the Maryland Constitution. (Paper 1, at 4-9). After Defendants filed their answer (Paper 7), the City filed a motion to dismiss the battery and negligent training/supervision counts (counts two and three). (Paper 9). Plaintiffs did not oppose the motion (Paper 10), so the court granted it and dismissed counts two and three as to the City. (Paper 11). Defendants have now moved for summary judgment as to all remaining counts of the complaint. (Paper 21).

## II.  Standard of Review

The standards on summary judgment are familiar.  A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there are clearly factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

On a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.*  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary

judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

## III. Analysis

### A.   Claims Against Officer Burnett

### 1.   State and Federal Constitutional Claims

Plaintiffs allege that their seizure and arrest violated their rights, ostensibly under the Fourth Amendment to the United States Constitution (count one),[4] as well as their right

---

[4] The complaint does not actually specify the legal basis for Plaintiffs' excessive force claim, but a "court must look to the substance of the complaint, the relief sought, and the course of proceedings to determine the nature of the plaintiff's claims." *Briggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995). Because the "excessive force" claim is decidedly similar to a conventional Section 1983 claim pursuant to the Fourth Amendment, and notes that the City acted under "color of law," the court will construe it as such.

to due process of law under the Fifth Amendment (count seven).[5] They also allege violations of their state constitutional rights under Articles 24 and 26 of the Maryland Declaration of Rights (count eight). Defendants respond that there were no violations of any constitutional rights. As explained below, Defendants are correct that there was no constitutional violation. Summary judgment must be granted on counts one, seven and eight as to Officer Burnett.

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that (1) the defendant deprived him of a right secured by the Constitution or the laws of the United States, and (2) and the deprivation was achieved by defendants acting under color of state law. *Paul v. Davis*, 424 U.S. 693, 696-97 (1976), *reh'g denied*, 425 U.S. 985. To state a claim under Article 24 and 26 of the Maryland Declaration of Rights, a plaintiff must establish that "(1) [t]he defendant-officer engaged in activity that violated one of the plaintiff's Maryland constitutional rights, and (2) [t]he defendant-officer engaged in such activity with actual malice toward the

_____

[5] Plaintiffs disclaim any claim under the Fifth Amendment in their opposition to Defendants' motion for summary judgment. (Paper 29, at 13). Nevertheless, the court discusses the putative due process claim herein because the complaint references it. (Paper 1, Compl., at 8).

plaintiff." *Davis v. DiPino*, 99 Md.App. 282, 289 (1994), *rev'd on other grounds*, 337 Md. 642 (1995). Article 24 protects substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures; courts therefore construe the provisions *in pari materia* with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively. *See Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 424 (2006); *see also Carter v. State*, 367 Md. 447, 458 (2002). Thus, Plaintiffs' Maryland Declaration of Rights claim (count eight) and Fourth Amendment claims (count one) are analyzed under the same standard.

In counts one and seven of the complaint, Plaintiffs assert separate Fourth and Fifth Amendment claims. The heart of Plaintiffs' complaint, however, is that Defendants violated their constitutional rights during the traffic stop and subsequent altercation. Thus, there is no separate due process claim. As the Supreme Court of the United States explained in *Graham v. Connor*, 490 U.S. 386, 395 (1989):

> Today we make explicit what was implicit in *Garner's* analysis, and hold that all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an

> explicit textual source of constitutional
> protection against this sort of physically
> intrusive governmental conduct, that
> Amendment, not the more generalized notion
> of "substantive due process," must be the
> guide for analyzing these claims.

(footnote omitted). Therefore, Plaintiffs have no cause of action based on the Fifth Amendment. The court will analyze their state and federal constitutional claims under the Fourth Amendment reasonableness standard.

### a. Seizure

Plaintiffs allege that Officer Burnett "committed an unreasonable seizure" (Paper 1, at 8); in particular, they contend that Officer Burnett made the arrests without probable cause (Paper 29, at 10).[6] Defendants counter that the officer possessed probable cause to believe that Plaintiffs committed a number of offenses.

---

[6] The complaint alleges that Plaintiffs "were subjected to the unlawful seizure of false arrest and false imprisonment." (Paper 1, at 8). Because it appears that Plaintiffs challenge their actual arrests – and not the initial traffic stop – the court focuses on the arrest in its discussion of this claim. The court observes, however, that the limited seizure of a traffic stop may be justified "by probable cause or reasonable suspicion." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993), *cert. denied*, 511 U.S. 1006. Defendants have presented unrebutted evidence of reasonable suspicion to stop Dixon: Officer Dixon could not see the registration sticker on the vehicle, and communications informed him that the license plates did not belong to Dixon's vehicle.

"Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998).  Probable cause is based on the "factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996)).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  A court will examine the events leading up to the arrest, and then decide whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Here, Officer Burnett was objectively reasonable in believing that he possessed sufficient probable cause to arrest Plaintiffs.  Specifically, the facts evidence probable cause of the crime of hindering.  In Maryland, hindering has four elements:  "(1) [a] police officer engaged in the performance of a duty; (2) [a]n act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) [k]nowledge by the accused of facts comprising

[the first element]; and (4) [i]ntent to obstruct or hinder the officer by the act or omission constituting [the second element]." *Davis v. DiPino*, 354 Md. 18, 33 (1999) (quoting *Cover v. State*, 297 Md. 398, 413 (1983)).

Officer Burnett could have reasonably believed that Hayes was hindering by verbally accosting him, even after he told her to move away from the scene. This type of hindering is "positive indirect obstruction, where the police are not acting directly against the [individual] but are acting against other citizens who are, or may be, about to commit offenses against the criminal law, and the [individual] does an act which obstructs them . . . intending to frustrate the police operation." *Id.* The unrebutted evidence shows that Officer Burnett was engaged in a valid traffic stop to determine if a vehicle was appropriately registered. *See* Md. Code Ann., Transp. § 13-402(i) (stating that driving an unregistered vehicle is a misdemeanor crime). Hayes interfered with that stop, such that Officer Burnett was unable to continue. Given that Hayes continued interfering even after Officer Burnett ordered her to stop, one can infer intent to impede "the police operation." *See, e.g.*, *Barrios v. State*, 118 Md.App. 384, 403 (1997), *cert. denied*, 349 Md. 234 (individuals where appropriately convicted of hindering where they "yelled at the

14

officers, pushed and shoved against them, and refused to back away when the officers ordered them to do so").

Officer Burnett also possessed sufficient probable cause to arrest Dixon. It is undisputed that Dixon stepped out of his vehicle and moved toward Officer Burnett while he was attempting to restrain Hayes. The parties cannot agree on whether Dixon actually assaulted Officer Burnett, but that is not required to establish hindering. A number of facts evidence that Dixon was hindering, such as Dixon's behavior, his statements to Officer Burnett to take his hands off his wife, and his movement away from the car after the officer ordered him to stay back. *Cf. Wildberger v. State,* 74 Md.App. 107, 114 (1988) (affirming hindering conviction where individual moved toward officer after being told she would be arrested if she interfered, yelled obscenities, and told officer not to touch her daughter).

Because the court finds sufficient probable cause of the crime of hindering to sustain the arrests, there is no need to discuss the other offenses discussed by Defendants. Taking the facts in the light most favorable to Plaintiffs, there is no constitutional violation stemming from Plaintiffs' seizure and summary judgment will be granted on this claim.

**b. Use of Force**

Plaintiffs allege that Officer Burnett "used excessive and unreasonable force on the plaintiffs, inasmuch as no force whatsoever was warranted under the circumstances nor authorized." (Paper 1, Compl., at 4). Because there was probable cause for the arrests, Officer Burnett was authorized to use the amount of force reasonably necessary to effectuate the arrests.

The Fourth Amendment right to be free from unreasonable searches and seizures does protect an individual's right to be free from excessive force during an arrest. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Although Plaintiffs have not actually specified what force that they find fault with, the court assumes that they take issue with Officer Burnett's use of OC spray.

As noted above, the objective reasonableness standard applies in this context. The Fourth Amendment's objective reasonableness standard requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (internal citation omitted). Factors to consider include the severity of

16

the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham,* 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.* In addition, the court must allow for reasonable mistakes. *Schultz v. Braga*, 455 F.3d 470, 478 (4th Cir. 2006).

The Fourth Circuit explained its approach to the *Graham* legal standard in *Greenidge v. Ruffin,* 927 F.2d 789 (4th Cir. 1991). The court noted that an officer's use of force must be judged from the perspective of the officer on the scene rather than the 20/20 vision of hindsight. *Id.* at 791 (quoting *Graham*, 490 U.S. at 396). Moreover, reasonableness analysis must allow for the fact that police officers are often forced "to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* at 791 (citing *Graham,* 490 U.S. at 396) (internal quotations omitted). The Fourth Circuit has further held that reasonableness is determined "based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton,* 393 F.3d 471, 477 (4th Cir. 2005).

A careful balancing of the *Graham* factors reveals that the amount of force used here was objectively reasonable, even taking the facts in the light most favorable to Plaintiffs. The first factor, the seriousness of the crime, weighs in favor of Officer Burnett. Although there is some dispute amongst the parties concerning what Officer Burnett said to Plaintiffs, "this subjective clash of beliefs is not one that we need to resolve." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). What is clear is that Officer Burnett ordered Hayes to step away from the scene in some manner and that Hayes did not comply. As the court explained in *Cleary v. Green*, No. CCB-07-1202, 2008 WL 4900548, at *4 (D.Md. Nov. 6, 2008), the failure to comply with a lawful police order can constitute "a serious infraction," particularly in the context of a traffic stop such as this one. *See also, e.g.*, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), *cert. denied*, 543 U.S. 988 (finding use of taser gun appropriate in "difficult, tense and uncertain situation" of traffic stop with uncooperative individual). The Fourth Circuit has endorsed the use of force against an individual who fails to comply with a police order. *Brown*, 278 F.3d at 369. Other courts have also recognized that a failure to comply with a police order can justify the use of pepper spray. *See, e.g.*, *Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir.

2001); *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995).
Both Plaintiffs disobeyed an order. When Hayes continued
talking to Officer Burnett during the attempted traffic stop,
she disobeyed his order to step away. Similarly, when Dixon
stepped out of the car and moved toward Hayes and Officer
Burnett, a reasonable officer could have interpreted those
actions as a failure to follow Officer Burnett's orders to stay
back.

The second *Graham* factor also favors Officer Burnett.
Admittedly, "it is undisputed that [Plaintiffs were] neither
armed *nor suspected of being armed*." *Jones*, 325 F.3d at 529
(emphasis in original). Nevertheless, Officer Burnett faced an
escalating situation where he was outnumbered three to one by
Hayes, Dixon, and Sallis. While attempting to restrain Hayes,
Officer Burnett had to contend with Dixon, who intervened in
Hayes' arrest because, in his words, "nature [told] me that I
ha[d] to protect my wife." (Paper 21-6, Ex. C, at 7). In the
moment, a reasonable officer could characterize this situation
as dangerous. "Given sufficient time to reflect, a reasonable
officer may well have stayed his hand. The volatile,
threatening situation facing [Officer Burnett], however, did not
afford time for reflection." *Alford v. Cumberland Cnty.*, No.
06-1569, 2007 WL 2985297, at *5 (4th Cir. Oct. 15, 2007).

Finally, the third *Graham* factor supports Officer Burnett's actions. Hayes contends that she was not resisting arrest, but the objective facts (including the extended nature of the struggle between Officer Burnett and Hayes) reflect that Officer Burnett was having some difficulty in restraining her. Moreover, "[i]t was not unreasonable for the officer[] to believe that a suspect who had already disobeyed one direct order would balk at being arrested." *Brown*, 278 F.3d at 369. Thus, Officer Burnett's conduct was objectively reasonable.

One case, *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001), gives the court pause. In *Park*, a husband and wife mistakenly entered a convenience store that they believed was open, triggering the alarm. *Id.* at 848. After police arrived, various events led them to detain the husband. *Id.* When the wife saw her husband being handcuffed and pressed against a building, she responded by running towards her husband. *Id.* Police officers grabbed her, threw her up against the building, handcuffed her, and sprayed her twice in the eyes with OC spray at close range. *Id.* The Fourth Circuit determined that this "irresponsible use of pepper spray twice from close range was indeed excessive. . . . It is difficult to imagine the unarmed [wife] as a threat to the officers or the public." *Id.* at 852-53.

A closer reading of *Park*, however, reveals that the case is inapposite to the present case. In *Park*, two deputies had secured the scene and the circumstances were anything but heated. The deputies successfully detained the wife and then, seemingly without provocation, applied two blasts of OC spray to a single individual. *Id.* at 848. Those circumstances stand in stark contrast to the present case, where Officer Burnett, patrolling alone, faced a rapidly escalating situation involving two parties who were not under control. He then applied only one blast of spray to each party. Although even this minimal use of OC spray is not to be encouraged, and may be most unfortunate in retrospect, it was reasonable in the moment. Not every application of police force, "'even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2ᵈ Cir. 1973)).

Therefore, lacking a constitutional violation for excessive force, Officer Burnett is entitled to summary judgment on this claim.

**2.  Maryland State Law Claims**

Plaintiffs assert several state law intentional tort claims, including battery (count two), intentional infliction of emotional distress (count four), false arrest and imprisonment

21

(count five), and malicious prosecution (count six).  Counts five and six are asserted against both Defendants, while counts two and four are asserted only against Officer Burnett.

### a.  Intentional Infliction of Emotional Distress

Defendants assert that Officer Burnett's conduct was not "intolerable in a civilized society" and caused no severe injury, barring any claim for intentional infliction of emotional distress.  (Paper 21-2, at 21).  Plaintiffs make no response.

To prove a claim of intentional infliction of emotional distress, Plaintiffs must show: (1) Defendants' conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) a causal connection existed between the conduct and the emotional distress; and (4) the emotional distress was severe (the "severity" prong).  *Caldor v. Bowden*, 330 Md. 632, 641-42 (1993) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)).  To satisfy the severity prong, a plaintiff must show "he suffered a severely disabling emotional response to the defendants' conduct."  *Harris*, 281 Md. at 570.

Given the court's earlier conclusions that Officer Burnett did not use excessive force or unlawfully seize Plaintiffs, it logically follows that his conduct was not "extreme and outrageous."  Plaintiffs also have not offered any evidence of

any particular injuries at the summary judgment stage, so the court cannot say that the emotional distress was sufficiently severe.

### b.   False Arrest and False Imprisonment

Under Maryland law, the necessary elements of false arrest and false imprisonment claims are the same:  "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification."  *Heron v. Strader*, 361 Md. 258, 264 (2000); *see also De Ventura v. Keith*, 169 F.Supp.2d 390, 398 (D.Md. 2001).  The relationship between false arrest and false imprisonment is such that the "legal justification" to detain element is the "equivalent to legal authority" under the law of arrest.  *Dett v. State*, 161 Md.App. 429, 441, *aff'd* 391 Md. 81 (2005).  "With regard to an arrest by a police officer, the officer's liability 'will ordinarily depend upon whether or not the officer acted within his legal authority to arrest.'"  *Green v. Brooks*, 125 Md.App. 349, 366 (1999) (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995)).

An officer has legal authority to arrest a suspect if the officer was present or in view when the suspect attempted to commit a felony or misdemeanor.  *See* Md. Code Ann., Crim. Proc. § 2-202.  Because the court has concluded that Officer Burnett possessed probable cause to arrest Plaintiffs for misdemeanors

committed in his presence, the court will enter summary judgment for Defendants on count five, the false arrest and imprisonment claim.

### c. Battery

Plaintiffs additionally assert a claim of battery against Officer Burnett. "A battery has been defined as a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." *Saba v. Darling*, 320 Md. 45, 49 (1990). In the excessive force context, "the principle of reasonableness announced in *Graham* 'is the appropriate one to apply' to . . . common law claims of battery." *Randall v. Peaco*, 175 Md.App. 320, 332 (2007) (quoting *Richardson v. McGriff*, 361 Md. 437, 452 (2000)). Because the court has already determined that Officer Burnett did not use excessive force or unlawfully arrest Plaintiffs, the court must conclude that there is no cause of action for battery either. *Njang v. Montgomery Cnty., Md.*, 279 F.App'x. 209, 216 (4th Cir. 2008) (under Maryland law, dismissing action for battery where there was no excessive force); *Hines v. French*, 157 Md.App. 536, 551 n.4 (2004) ("[I]f the arrest was not a false imprisonment, then the physical force used to effectuate the arrest is not tortious.").

**d. Malicious Prosecution**

Finally, Plaintiffs contend that Officer Burnett is liable for malicious prosecution because he "caused the malicious prosecution of [Plaintiffs] for allegedly resisting arrest among other charges, even though he knew that no basis for charges existed." (Paper 1, at 7). Defendants respond that Officer Burnett possessed probable cause to institute the proceedings and contend that Plaintiffs have not provided sufficient evidence of malice. (Paper 21-2, at 21-22).

To establish a malicious prosecution claim, Plaintiffs must show that: (1) Officer Burnett instituted criminal proceedings against Plaintiffs; (2) the criminal proceeding was resolved in Plaintiffs' favor; (3) Officer Burnett did not have probable cause to institute the proceeding; and (4) Officer Burnett acted with malice or a primary purpose other than bringing Wallace to justice. *Okwa v. Harper*, 360 Md. 161, 183 (2000). Maryland has long recognized that "suits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) (citing *N. Point Constr. Co. v. Sagner*, 185 Md. 200, 206 (1945)). "[The plaintiff] must produce evidence with regard to *all four elements* of malicious prosecution in order successfully

to oppose a motion for summary judgment." *Nasim v. Tandy Corp.*, 726 F.Supp. 1021, 1024 n. 4 (D.Md. 1989) (emphasis added).

All parties would seem to agree that the first two elements are met. Officer Burnett instituted the proceedings, and Plaintiffs achieved a favorable outcome when the jury acquitted them. But Plaintiffs' claim at least stumbles on the third element, probable cause, and falls flat on the fourth, malice. The court has already concluded that Officer Burnett had probable cause to arrest Plaintiffs. Many of those same circumstances reflect that he had probable cause to initiate proceedings. The court need not make any definitive determination on this element, however, as Plaintiffs have not provided any evidence that any "wrongful or improper motive" drove Officer Burnett's actions. *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 360 (4th Cir. 1998) (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 718 (Md. 1995)). Repeated insistences that the bases for the traffic stop and subsequent arrests were "fabricated" or "manufactured" (Paper 29, at 17) are not enough to escape summary judgment.

## B. Claims Against the City

Under Section 1983, local governmental entities like the City have no *respondeat superior* liability under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

26

Municipalities are directly liable for constitutional deprivations only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694; *see also Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987), *cert. denied sub nom.*, 484 U.S. 1027 (1988). Plaintiffs do not contend that the City had an official policy encouraging its officers to launch unprovoked attacks on civilians. Perhaps more importantly, municipal liability in this context is dependent on an initial finding that a government employee violated a plaintiff's constitutional rights. *Dawson v. Prince George's Cnty.*, 896 F.Supp. 537, 540 (D.Md. 1995). Because the court will grant judgment in favor of Officer Burnett, there is no basis for federal or state constitutional liability for the City. Similarly, all of the state law claims against the City are predicated upon some wrongful act by Officer Burnett. Given that the court has granted summary judgment for Officer Burnett on those claims, judgment will be entered in favor of the City as well.[7]

---

[7] Moreover, a city is generally immune to common law tort claims asserted against it based on torts committed by its police officers. *Gray-Hopkins v. Prince George's Cnty., Md.*,
continued

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

309 F.3d 224, 234 (4th Cir. 2002); *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 553-54 (1996).